UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| GIULIA JARAMILLO, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : NO. 3:06cv1263 (MRK) |
| | : |
| PROFESSIONAL EXAMINATION | : |
| SERVICE, INC. and STEPHEN B. | : |
| CARRAGHER, | : |
| | : |
| Defendants. | : |

**RULING AND ORDER**

Currently pending before the Court is Defendant Professional Examination Service's ("PES") Motion for Summary Judgment [doc. # 53]. For the reasons that follow, the Court GRANTS PES's Motion for Summary Judgment.

**I.**

The only claim currently at issue is Ms. Jaramillo's equal protection claim against PES, brought under 42 U.S.C. § 1983. This claim originates from actions taken in 2004 and 2005, when Ms. Jaramillo alleges that the State and PES failed to provide her with adequate accommodations for two sittings of a licensing exam in Marital and Family Therapy. Ms. Jaramillo sat twice for the Connecticut licensing exam in Marital and Family Therapy, on October 8, 2004 and February 12, 2005. Ms. Jaramillo is legally blind, and she applied for special accommodations each time she took the exam. She requested an audiotape version of the exam or the use of a computer with adaptive equipment, in addition to her closed caption television ("CCTV") (a print enlarger), to aid her in seeing the exam. She was allowed to use her CCTV both times, supplemented by a live reader

1

during the first exam and extended time during the second exam. Ms. Jaramillo failed the exam both times.

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in original)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the plaintiff, *see Anderson*, 477 U.S. at 255. If the moving party carries its burden, the party opposing summary judgment "may not rest upon . . . mere allegations or denials . . . ." Fed. R. Civ. P. 56(e). Rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## III.

Ms. Jaramillo originally claimed that PES violated both Section 504 of the Rehabilitation Act, by refusing reasonably to accommodate her disability, and the Equal Protection Clause of the United States Constitution, by discriminating against the "class of persons suffering from fundus flavimaculitis." Complaint [doc. # 1], at 3. She has since abandoned her claim under the Rehabilitation Act against PES only, and therefore summary judgment may enter for PES on Ms. Jaramillo's Section 504 claim. PES advances two arguments in support of its motion for summary judgment on Ms. Jaramillo's equal protection claim, the only remaining claim against PES: (1) that PES is not a state actor and therefore is not subject to the requirements of the Equal Protection Clause or the provisions of § 1983; and, in the alternative, (2) that the undisputed facts show that PES did not violate the Equal Protection Clause. The Court agrees with both of PES's arguments.

### A.

Ms. Jaramillo brings her equal protection claim by means of 42 U.S.C. § 1983, and therefore she must show that PES acted under color of state law in order to hold PES liable for that constitutional violation. *See O'Mara v. Town of Wappinger*, 485 F.3d 693 (2d Cir. 2007). It is undisputed that PES is a private corporation and as such, it would not normally be subject to the restrictions imposed by the Equal Protection Clause. This Court has previously considered the state action doctrine as applied to a private actor. *See Szekeres v. Schaeffer*, 304 F. Supp. 2d. 296, 304-05 (D. Conn. 2004). As *Szekeres* emphasizes, when analyzing allegations of state action, the court must begin "'by identifying the specific conduct of which the plaintiff complains.'" *Id*. at 306 (quoting

3

*Tancredi v. Met. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir.2003)). "In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be 'fairly attributable' to the state." *Tancredi*, 316 F.3d at 312. "Conduct that is ostensibly private can be fairly attributed to the state only if there is 'such a close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id*. (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quotation marks omitted)). Accordingly, "[s]tate action may properly be found where the state exercises 'coercive power' over, is 'entwined in [the] management or control' of, or provides 'significant encouragement, either overt or covert' to, a private actor, or where the private actor 'operates as a willful participant in joint activity with the State or its agents,' is 'controlled by an agency of the State,' has been delegated a '"public function" by the state, or is 'entwined with governmental policies.'" *Id*. at 313 (quoting *Brentwood Acad.*, 531 U.S. at 296).[1]

PES designed the licensing exam in concert with the Association of Marriage and Family Therapy Regulatory Boards, not the State of Connecticut. PES administers the exam through a private subcontractor, Prometric, and then PES grades the completed exams by putting them through an electronic scanner. It is undisputed that everything else related to the exam, including who may sit for the exam, the score required to pass the exam, and which special accommodations, if any, will be provided to those taking the exam, is the responsibility of the State of Connecticut. This separation of duties is set forth clearly in the contract between the State and PES. The only evidence

---

[1] Even if alleged conduct by a private party does not amount to state action for the purposes of § 1983 liability, a private party may also be subject to suit under § 1983 if the private party acted in concert or conspired with a state actor to violate a plaintiff's constitutional rights. *Ciambriello*, 292 F.3d at 324. Ms. Jaramillo does not allege a conspiracy between the State and PES to violate her constitutional rights.

4

Ms. Jaramillo provides to suggest that PES is involved in the decision to provide accommodations to those who sit for the exams – the specific conduct that is the focus of Ms. Jaramillo's claims – is the description of alleged phone conversations she had with a PES employee. Ms. Jaramillo claims that this employee told her to take the accommodations PES was offering, that is, a live reader, extended time, or both, or nothing.

Taking these allegations to be true, the Court nevertheless concludes that they are insufficient to show that PES was a state actor. The statements are consistent with PES's undisputed position that the State determines which accommodations each candidate qualifies for, among those that PES is financially and technologically capable of providing. Furthermore, even assuming that PES did play some role in determining which special accommodations were to be offered to candidates – and there is no admissible evidence of that – the Court nevertheless concludes that such involvement would not be sufficient to make PES a state actor. In this respect, the Court notes that the private parties in *Blum v. Yaretsky*, 457 U.S. 991 (1982), and *Rendell-Baker v. Cohn*, 457 U.S. 830 (1982), for example, were found not to be state actors, despite significantly stronger ties to the state than are presented in this case. In short, there is no evidence that the State exercises coercive power over PES, is entwined in the management or control of PES, has been delegated a public function by the State, or is entwined with governmental policies. To the contrary, all of the evidence shows that PES is simply a government contractor, and that alone is not sufficient to transform it into a state actor. *See Rendell-Baker*, 457 U.S. at 840-841 ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 152 (2d Cir. 2004) (distinguishing "a private

contractor whose internal management decisions are beyond state regulation" from the Westport Library, over which the Town exerted significant control, and finding the latter a state actor).

**B.**

Turning to her equal protection claim and assuming *arguendo* that PES was a state actor, Ms. Jaramillo agrees that the class of persons suffering from fundus flavimaculitis is not a protected class, and therefore, she also agrees that the decision to provide her with a live reader rather than an audiotape or a mechanical reader, as she requested, is subject only to the rational basis test. *See City of New Orleans v. Dukes*, 427 U.S. 297 (1976). Under this test, the decision need only be "rationally related to a legitimate state interest." *Id.* at 303. So long as there is a reasonable set of facts that could provide a rational basis for the decision, the rational basis test is satisfied. *See U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) ("Where, as here, there are plausible reasons for Congress' action, our inquiry is at an end."); *Colaianni v. INS*, 490 F.3d 185 (2d Cir. 2007) (rejecting rational basis challenge to statute distinguishing between adopted alien children of native-born and naturalized citizens); *Collier v. Barnhart*, 473 F.3d 444, 449 (2d Cir. 2007) (rejecting rational basis challenge to Social Security Disability Insurance eligibility requirements on the ground that they disproportionately affected women); *United States v. Castillo*, 460 F.3d 337, 350 (2d Cir. 2007) (reaffirming rejection of rational basis challenge to 100:1 ratio of crack to cocaine in sentencing guidelines).

Ms. Jaramillo alleges, and the Court accepts as true for the purposes of this motion, that the live reader at the October 8th sitting corrected answers that the reader believed to be incorrect, asked Ms. Jaramillo to reconsider her answers, and needed to take several breaks as the result of a medical condition. Despite the problems Ms. Jaramillo may have had with this particular live reader,

6

however, the Court concludes that there is nothing in the record that would permit a reasonable juror to decide that offering a live reader rather than an audiotape or a mechanical reader is irrational or arbitrary. In fact, a live reader was one of various forms of accommodation that Ms. Jaramillo utilized successfully while in college and graduate school. She had also previously used scribes, oral exams, and audiotape recordings of exams in conjunction with her CCTV. *See* Transcript at 12-13 (indicating that Ms. Jaramillo graduated *summa cum laude* from the University of Rhode Island and received ten awards prior to her college graduation); *id.* at 61-66 (detailing accommodations used while at the University of Rhode Island). As noted, Ms. Jaramillo was permitted to use her CCTV during both exams, and the additional accommodations offered were similar to accommodations she had been offered in the past. While the problems Ms. Jaramillo had with her particular human reader might entitle her to another opportunity to take the exam or might be a basis to void the results, that does not mean that the decision to accommodate Ms. Jaramillo's needs through use of a human reader was arbitrary, irrational, or a denial of equal protection.

Indeed, Ms. Jaramillo herself made clear in her deposition testimony that her complaints are directed solely at the *administration* of the exam on the two test days, which was the responsibility of PES's subcontractor Prometric, rather than the accommodations arranged by the State (possibly with the assistance of PES according to Ms. Jaramillo). For example, when counsel asked Ms. Jaramillo, "In fact, you were given all these special accommodations, weren't you?," she responded, "Yes." Counsel continued, "So, you don't have an issue with the special accommodations given to you on the first exam; isn't that true?" Ms. Jaramillo answered once again, "That's correct. I have an issue with the way they were administered to me." Transcript, 120:16-23. Similarly, Ms. Jaramillo testified that she received all the accommodations identified in the agreement between

7

herself and the State at the second examination; when asked, "Now, to what do you attribute the reason that you failed the second exam?," she responded, "The time that I spent in the exam." *Id.* at 154:15-17; *see also id.* at 107:18 to 108:2 (A. "The accommodations were being provided, but the services were not appropriate." Q. "And what do you mean by service is not appropriate?" A. I was allowed to take my exam with the special accommodations, but when I went to the sites, no one knew who I was, no one was prepared for me, and no one made it even remotely comfortable for me to get settled in prior to taking such a huge exam, and I was doubted.").

Thus, Ms. Jaramillo clearly acknowledged that she had accepted the accommodations offered by the State, and her complaint was directed solely at the way in which those accommodations were administered on the day of the test. She identified the disruptive and non-compliant reader during the first exam and the sheer length of time she was required to concentrate during the second exam as the primary source of her difficulties. These problems are regrettable, but they do not suggest or establish that the accommodations offered Ms. Jaramillo were irrational, arbitrary, and violative of her rights to equal protection of the laws. *See, e.g.*, *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (holding that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational.").

**IV.**

For these reasons, the Court concludes that PES is not a state actor and that Ms. Jaramillo has failed to provide any evidence of an equal protection claim on the ground that the accommodations offered to her lacked a rational basis. Thus, PES's Motion for Summary Judgment [doc. # 53] is GRANTED.

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: October 15, 2007.**