# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| GIULIA JARAMILLO, | : |
| Plaintiff, | : |
| v. | : NO. 3:06cv1263 (MRK) |
| PROFESSIONAL EXAMINATION SERVICE, INC. and STEPHEN B. CARRAGHER, | : |
| Defendant. | : |

## RULING AND ORDER

Currently pending before the Court are Defendant Stephen B. Carragher's Motion for Summary Judgment [doc. # 92] and Motion to Strike [doc. # 108]. For the reasons that follow, the Court GRANTS Mr. Carragher's Motion for Summary Judgment and DENIES AS MOOT his Motion to Strike. The Court previously dismissed Ms. Jaramillo's claims against the other defendant in this case, Professional Examination Service ("PES"), *see* Ruling & Order [doc. # 83], and assumes familiarity with that decision.

## I.

Ms. Jaramillo has raised two claims, one for equal protection under 42 U.S.C. § 1983, and one for discrimination under § 504 of the Rehabilitation Act.[1] These claims originate from actions taken in 2004 and 2005, when Ms. Jaramillo alleges that the State and its subcontractor PES failed to provide her with adequate accommodations for two sittings of a licensing exam in Marital and

---

[1] At argument, Ms. Jaramillo's counsel conceded that Mr. Carragher is sued in his individual capacity only under § 1983, since a state is not a person under § 1983, and in his official capacity only under § 504, since an individual cannot be sued under § 504. *See Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) (describing rare conditions under which state employee may be sued in his official capacity, and only for prospective injunctive relief); *Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (individual-capacity suit unavailable under § 504).

Family Therapy.  Ms. Jaramillo sat twice for the Connecticut licensing exam in Marital and Family Therapy, on October 8, 2004 and February 12, 2005.  Ms. Jaramillo is legally blind, and she applied for special accommodations each time she took the exam.  She requested an audiotape version of the exam or the use of a computer with adaptive equipment, in addition to her closed caption television ("CCTV") (a print enlarger), to aid her in seeing the exam.  She was allowed to use her CCTV both times, supplemented by a live reader during the first exam and extended time during the second exam.  Ms. Jaramillo failed the exam both times.

## II.

The summary judgment standard is a familiar one.  Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in original)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the plaintiff, *see Anderson*, 477 U.S. at 255.  If

the moving party carries its burden, the party opposing summary judgment "may not rest upon . . . mere allegations or denials . . . ." Fed. R. Civ. P. 56(e). Rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

**III.**

The Court turns first to Ms. Jaramillo's equal protection claim under § 1983. In order to succeed on such a claim, Ms. Jaramillo must show both that the defendant was a state actor and that her constitutional rights were violated. As Mr. Carragher was employed as a Health Program Supervisor for the Office of Practitioner Licensing and Certification at the Connecticut Department of Public Health, the first requirement is met. However, as stated in its prior ruling, Ms. Jaramillo has failed to provide sufficient evidence to permit a reasonable jury to conclude that her constitutional rights have been violated. Her counsel acknowledged at oral argument on PES's motion for summary judgment that because sufferers of fundus flavimaculitis do not constitute a protected class, the appropriate standard of review is rational basis. *See City of New Orleans v. Dukes*, 427 U.S. 297 (1976). Under the rational-basis test, a decision need only be "rationally related to a legitimate state interest." *Id.* at 303. So long as there is a reasonable set of facts that could provide a rational basis for the decision, the rational-basis test is satisfied. *See U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) ("Where, as here, there are plausible reasons for Congress' action, our inquiry is at an end."); *Colaianni v. INS*, 490 F.3d 185 (2d Cir. 2007) (rejecting rational basis

3

challenge to statute distinguishing between adopted alien children of native-born and naturalized citizens); *Collier v. Barnhart*, 473 F.3d 444, 449 (2d Cir. 2007) (rejecting rational basis challenge to Social Security Disability Insurance eligibility requirements on the ground that they disproportionately affected women); *United States v. Castillo*, 460 F.3d 337, 350 (2d Cir. 2007) (reaffirming rejection of rational basis challenge to 100:1 ratio of crack to cocaine in sentencing guidelines).

Nevertheless, at oral argument on Mr. Carragher's motion, Ms. Jaramillo's counsel attempted to evade this prior concession and claimed that a higher level of scrutiny was appropriate under *Tennessee v. Lane*, 541 U.S. 509 (2004). Putting to the side whether Ms. Jaramillo should be bound by her counsel's concession earlier in this case, the Court finds *Tennessee v. Lane* entirely inapposite. In *Lane*, the Supreme Court considered whether Title II of the Americans with Disabilities Act exceeded Congress's power under § 5 of the Fourteenth Amendment. During the course of its discussion of the evidence that Congress had before it when it passed Title II, the Court noted that it is easier for Congress to show a pattern of state constitutional violations when legislation is targeted at classifications that are subject to heightened scrutiny, as opposed to those that are subject only to rational-basis review. The Court then made the following observation:

> Title II is aimed at the enforcement of a variety of basic rights, *including the right of access to the courts at issue in this case*, that call for a standard of judicial review at least as searching, and in some cases more searching, than the standard that applies to sex-based classifications.

541 U.S. at 529 (emphasis added).

Because *Lane* involved legislation implicating "the accessibility of judicial services," *id.* at 531, the Court held that Title II was valid § 5 legislation. But nothing in *Lane* suggests that anything

4

other than rational-basis review is appropriate when the claim presented is not accessibility to the courts but rather equal protection based upon membership in the class of persons with fundus flavimaculitis. Indeed, *Lane* held that even when access to the courts is at issue, the state need make only "reasonable modifications" of its services to accommodate the disabled, a requirement that "can be satisfied in a number of ways." *Id..* at 532.

Having determined that rational basis is the proper standard, the Court concludes that no reasonable jury could find that the State's decision to provide Ms. Jaramillo with a reader and her CCTV at the first exam, and her CCTV and extended time at the second exam, was unreasonable. In fact, it is undisputed that a live reader was one of various forms of accommodation that Ms. Jaramillo utilized successfully while in college and graduate school. She had also previously used scribes, oral exams, and audiotape recordings of exams in conjunction with her CCTV. *See* Deposition of Giulia Jaramillo ("Jaramillo Depo.") at 12-13 (indicating that Ms. Jaramillo graduated *summa cum laude* from the University of Rhode Island and received ten awards prior to her college graduation); *id.* at 61-66 (detailing accommodations used while at the University of Rhode Island). As noted, Ms. Jaramillo was permitted to use her CCTV during both exams, and the additional accommodations offered were similar to accommodations she had successfully utilized in the past. Her husband testified that when Ms. Jaramillo needed to read documents at home, she usually used her CCTV. *See* Deposition of Daniel Jaramillo at 29.

Additionally, Ms. Jaramillo herself testified at her deposition that her complaint lay not with the accommodations themselves as approved by the State, but rather with the manner in which PES and its subsidiary administered those accommodations. *See* Jaramillo Depo. at 120:19-23 ("Q. So, you don't have an issue with the special accommodations given to you on the first exam; isn't that

5

true? A. That's correct. I have an issue with the way they were administered to me."), 154:11-14 ("Q. And in the second exam, you didn't have any problems with the conduct of the test as it was actually going on; correct? A. That's correct."). For example, Ms. Jaramillo alleges, and the Court accepts as true for the purposes of this motion, that the live reader at the October 8th sitting corrected answers that the reader believed to be incorrect, asked Ms. Jaramillo to reconsider her answers, and needed to take several breaks as the result of a medical condition. The Court is sympathetic to Ms. Jaramillo's difficulties. However, despite the problems Ms. Jaramillo might have had with this particular live reader, the Court concludes that there is nothing in the record that would permit a reasonable juror to decide that offering a live reader rather than an audiotape or a mechanical reader is irrational. Similarly, Ms. Jaramillo testified that the reason she failed the second exam was "[t]he time that [she] spent in the exam." Jaramillo Depo. at 154:17. As she stated, "I did not realize, because I had never taken an exam for eight hours, that it would be grueling for me psychologically and I wouldn't be able to do it." *Id.* at 155:13-15. However, the fact that Ms. Jaramillo might now prefer other accommodations, such as the use of computer programs like JAWS and ZoomText, does not make the accommodations previously provided by the State unreasonable. *See Lane*, 541 U.S. at 532; Jaramillo Depo. at 146:13-17 (testifying that use of a reader versus JAWS and ZoomText was "a matter of personal preference, actually, in this case"). In this respect, the Court notes that in her application to take the licensing exam a third time, Ms. Jaramillo specifically requested a reader and extended time. *See* Affidavit of Jennifer Filippone [doc. # 107-2], at 6.

Because of the Court's ruling that Ms. Jaramillo's equal protection claim should be dismissed, it need not consider the possibility, raised in Ms. Jaramillo's affidavit and contested by Mr. Carragher in his Motion to Strike, that Mr. Carragher should be held personally liable for withholding

reasonable accommodations from Ms. Jaramillo as a result of his direct involvement in the alleged constitutional violation.

Turning now to Ms. Jaramillo's § 504 claim, the Court has previously noted that in order to make a *prima facie* showing under § 504, a plaintiff must demonstrate that she is an individual with a disability under the Rehabilitation Act; that she is otherwise qualified to participate in the activity or program or to enjoy the service or benefits offered; that she has been excluded from such an activity, program, service, or benefit by reason of her disability; and that the entity denying her the benefit receives federal funds. *See Mutts v. S. Conn. State Univ.*, No. 3:04 CV 1746(MRK), 2006 WL 1806179, at *4 (D. Conn. June 28, 2006), *aff'd*, 242 Fed. Appx. 725 (2nd Cir. 2007). Mr. Carragher appears to concede, at least for purposes of this motion, that Ms. Jaramillo is an individual with a disability under the Act and that the Connecticut Department of Public Health receives federal funds. Although the standards developed under the Americans with Disabilities Act generally apply to the Rehabilitation Act as well, the latter statute differs from the former in that the plaintiff's disability must be the *sole* reason for the denial of the benefit. *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48-49 (2d Cir. 2002). Thus, the question for a jury would be whether the State provided reasonable accommodations resulting in meaningful access for Ms. Jaramillo, or denied her such access solely on the basis of her disability.

For the same reasons discussed above with respect to Ms. Jaramillo's equal protection claim, the Court concludes that no reasonable jury could find that the accommodations provided by the State were unreasonable. Ms. Jaramillo had been quite successful in the past with identical accommodations, and several courts have made clear that the Rehabilitation Act and the Americans with Disabilities Act require only reasonable accommodations, not necessarily the particular

7

accommodations an individual would prefer. *See, e.g.*, *Camarillo v. Carrols Corp.*, – F.3d –, 2008 WL 341544, at *4 (2d Cir. 2008) (holding that the ADA requires fast-food restaurants to implement "policies or procedures to effectively train their employees how to deal with disabled individuals," but does not require a particular policy or procedure); *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 384-85 (2d Cir. 1996) (affirming grant of summary judgment for employer that provided certain accommodations for disabled employee but refused to provide others); *Nelson v. Ryan*, 860 F. Supp. 76, 81 (W.D.N.Y. 1994) ("The ultimate inquiry is not whether a plaintiff's actual request for an accommodation is allowed, but whether the accommodation offered to the plaintiff was, in fact, reasonable."). Further, Ms. Jaramillo has provided no evidence whatsoever – nor has she even alleged – that Mr. Carragher (and by extension the Department of Health) failed to provide reasonable accommodations *solely* on the basis of Ms. Jaramillo's disability. For both of these reasons, then, her § 504 claim necessarily fails.

## IV.

The Court remains sympathetic to Ms. Jaramillo's plight and to her frustration with the manner in which the accommodations previously approved by the State have been administered. It is the Court's hope that the reader assigned to Ms. Jaramillo for her third exam will be competent and thus enable her to succeed in qualifying for her state license in family and marital therapy. Nevertheless, for the reasons stated, Mr. Carragher's Motion for Summary Judgment [doc. # 92] is hereby GRANTED, and his Motion to Strike [doc. # 108] is DENIED AS MOOT. **The Clerk is directed to enter judgment and close this file.**

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: April 11, 2008.**